# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**HUNTER J. GARRETT,**

    **Plaintiff,**

    vs.

**OPPORTUNITIES FOR OHIOANS
WITH DISABILITIES,** *et al.***,**

    **Defendants.**

Case No. 2:19-cv-2227

Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the for resolution of a discovery dispute between the parties who have consented to the Undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c). (ECF No. 12.) The Court previously Ordered expedited briefing (ECF No. 53), the parties complied (ECF Nos. 55, 56), and the matter is ripe for review. For the reasons that follow, Plaintiff's motion to compel discovery is **DENIED**.

## I. Factual Background

The Rehabilitation Act allows states to receive federal funding to operate vocational rehabilitation programs that provide individuals with disabilities services that prepare them for employment. *See* 29 U.S.C. §720(a)(2). A state that receives funding must comply with federal guidelines and regulations. 29 U.S.C. §721. The state of Ohio receives such funding and Defendant, Opportunities for Ohioans With Disabilities ("OOD"), is the state agency authorized by Ohio to administer vocational rehabilitation services to individuals with disabilities under the Rehabilitation Act. (ECF No.1 at ¶¶ 15, 32.)

Plaintiff, Garrett Hunter, has been diagnosed with Autism and Attention-Deficit/Hyperactivity Disorder (ADHD). (ECF No. at ¶ 19.) He applied to receive disabilities-services support from OOD prior to starting college classes at Western Kentucky University ("WKU"). (*Id*. at ¶¶ 26, 28.) On March 18, 2018, OOD determined that Plaintiff was eligible for services and he was assigned a vocational rehabilitation counselor ("VRC"). (*Id*. at ¶ 71, 72.) Plaintiff and his parents met with Plaintiff's VRC, discussed Plaintiff's job goal (graphic design), and requested that OOD support Plaintiff in both attending WKU and participating in WKU's Kelly Autism Program ("KAP"). (*Id*. at ¶ 73, 4.)

According to Plaintiff's Complaint, KAP "provides supports specifically designed to address challenges faced by students with Autism Spectrum Disorder so that they are successful in college and in finding and obtaining gainful employment when they graduate." (*Id*. at ¶ 3.) KAP requires a $5,000 semesterly fee for its services that is not included in the price of tuition. (*Id*. at ¶ 57.) KAP's services are also provided in addition to any other available accommodation provided by WKU such as extended time in a quiet environment, note takers, books on tape, readers, etc. (*Id*. at ¶ 58.)

Plaintiff's VRC agreed that OOD would support Plaintiff's employment goal and Plaintiff's enrollment at WKU. (*Id*. at ¶ 74.) Plaintiff's request for support for KAP was, however, denied. (*Id*. at ¶ 75.) Plaintiff's VRC indicated that the request was denied because "the agency does not support such programs as the Kelly program." (*Id*. at ¶ 75.) Plaintiff's VRC additionally explained that vocational rehabilitation "staff shall not authorize for disability services or programs that are not required for an educational school or institution to provide without supervisor approval. This includes programming for specialized disability populations with separate fee associated. (*Id*. at ¶ 76.)

In December 2018, Plaintiff and his parents requested OOD support for Plaintiff's participation in KAP for the Spring semester at WKU and provided additional information to Plaintiff's VRC about KAP. (*Id*. at ¶ 77.) On January 8, 2019, OOD denied the request. (*Id*. at ¶ 78.) Plaintiff's VRC recognized that the KAP sounded "beneficial" but the agency would nevertheless decline to fund Plaintiff's participation in it. (*Id*. at ¶ 78.) Plaintiff's VRC explained: "The reason we are unable to support the [KAP] is that the agency's postsecondary policy states that a counselor will not authorize for specialized disability populations with a separate fee associated" and that vocational rehabilitation staff "or contractor shall not authorize for disability services and/or programs that are required for an educational school or institution to provide without supervisor approval. This includes programming for specialized disability populations with a separate fee associated." (*Id*. at ¶ 79.)

## II.   Procedural Background

### A.  The Administrative Action

Plaintiff administratively appealed the OOD's decision denying his request for support for KAP. (*Id*. at ¶ 83.) Prior to a formal administrative hearing, Plaintiff moved for permission to allow two witnesses to appear by phone who were both located in Bowling Green, Kentucky: the KAP Director and the KAP Assistant Program Manager, who was also Plaintiff's college advisor. (*Id*. at ¶92.) The hearing examiner issued a decision on March 12, 2019, allowing one witness of Plaintiff's choosing to appear by phone. (*Id*. at ¶ 93.) Plaintiff chose to have his college advisor testify. (*Id*. at ¶ 4.) The KAP Director, therefore, did not.

At the hearing, OOD asserted that Plaintiff's participation was denied because its policy prohibited payment for such programs unless a VRC supervisor, in his discretion, granted an exception. (*Id*. at ¶ 95.) Plaintiff's VRC also testified that he had spoken to his supervisor about

3

Plaintiff's request for KAP support even though Plaintiff's case file did not document such discussions. (*Id*. at ¶ 100.)

On May 13, 2019, the hearing examiner upheld the OOD's decision denying Plaintiff's request for KAP support. (*Id*. at ¶ 109.) In that determination, the hearing officer indicated that the question that had been presented was: "are the services provided by the KAP vocationally necessary?" (ECF No. 11, at PageID # 84.) The hearing officer concluded that although Plaintiff's file did not reflect that Plaintiff's VRC discussed Plaintiff's request for KAP support with the VRC supervisor, sworn credible testimony was presented that such discussions took place. (*Id*.) Moreover, the hearing officer indicated that although Plaintiff's file did not document why funding had been denied for KAP, at the hearing, OOD adequately explained that it had determined that not all of KAP's services were vocationally necessary and that OOD would not "parse out" and fund only the necessary ones, and in any event, KAP required payment of the total $5000 semesterly fee regardless of which services were used by program participants. (*Id*. at PageID # 85.) Therefore, the hearing officer ultimately concluded that OOD proved that it was more likely than not that the KAP program was not vocationally necessary. (*Id*. at PageID # 86.)

B. The Instant Action

On May 28, 2019, Plaintiff initiated this action seeking judicial review of the hearing officer's decision. (*See generally*, ECF No. 1.) Plaintiff alleged that OOD's denial of his request for support for KAP substantively and procedurally violated the Rehabilitation Act and its implementing regulations. (*Id*.)

On August 23, 2019, Plaintiff moved the court for leave to present additional evidence pursuant to 29 U.S.C. § 722(c)(5)(J)(ii)(II), which provides that in civil actions brought under the

4

Rehabilitation Act, a court "shall hear additional evidence at the request of a party to the action." (ECF No. 21.) Specifically, Plaintiff moved the Court to "allow, admit, and consider the deposition testimony from the Director of [KAP]," who did not testify during the administrative hearing, "regarding the vocational necessity" of KAP. (*Id*. at PageID # 730.) Plaintiff noted that the KAP Director had not testified because Plaintiff had only been permitted to present one witness via telephone. (*Id*. at PageID #733–34.) The Court granted Plaintiff's motion. (ECF No. 25.) In so doing, the Court found that the plain language of the statute and the Sixth Circuit Court of Appeal's interpretation of nearly identical language in another statute, the Individual with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i)(2)(C), made it "appropriate to admit additional evidence limited to the testimony by Director of the [KAP] as it relates to the issues before the hearing examiner." (*Id*. at PageID # 770.)

After the KAP Director's deposition was taken, the parties engaged in additional discovery. That discovery included the document requests that are the subject of Plaintiff's instant motion to compel.

### III. Standard of Review

Discovery is not ordinarily permitted in administrative appeals. Congress, however, has directed that the district courts "shall hear additional evidence at the request of a party" in cases brought under the Rehabilitation Act. 29 U.S.C. § 722(c)(5)(J)(ii)(II). Although the Sixth Circuit has not opined on the "additional evidence" language in the Rehabilitation Act, the Sixth Circuit has indicated that it is appropriate for district courts to look to precedent developed under similarly worded statutory provisions in IDEA when analyzing the Rehabilitation Act. *Diamond v. Michigan*, 431 F.3d 262, 266 n.8 (6th Cir. 2005).

In cases under IDEA, the Sixth Circuit "has taken an expansive view of the scope of

5

additional evidence that may supplement the administrative record." *Adam Wayne D. ex rel, David D. v. Beechwood Ind. Sch. District.*, 482 Fed. App'x. 52, 58 (6th Cir. May 22, 2012) (quoting *Deal v. Hamilton Cnty. Bd. of Ed.*, 392 F.3d 840, 850 (6th Cir.) (citing *Metro Gov't v. Cook*, 915 F.2d 232, 234 (6th Cir. 1990)). When adopting that expansive view, the Sixth Circuit explained that additional evidence does not mean "supplemental" in the sense of being limited to filling in the gaps of evidence previously introduced, but that it instead means new evidence. *Metro Gov't v. Cook*, 915 F.2d at 234. For that reason, the Sixth Circuit rejected a narrow position taken by the First Circuit Court of Appeals limiting additional evidence to instances where supplementation was necessary to fill "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the proceeding." *Id*. (quoting *Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984). Nevertheless, even though the Sixth Circuit concluded that the statute authorizes new evidence, it has also clarified that a district court must "avoid using additional evidence to rule upon issues beyond those presented to the [administrative law judge]." *Somberg on behalf of Somberg v. Utica Cmty. Sch.*, 908 F.3d 162, 174–75 (6th Cir. 2018).

In this case, the Court determined that Plaintiff would be permitted to introduce additional evidence related to the issues before the hearing examiner. That issue, as described by Plaintiff in his Motion to Admit Additional Evidence, was KAP's vocational necessity. (ECF No. 21, at PageID # 730, 737.) The discovery sought by Plaintiff must, therefore, be relevant to that issue.

IV. Analysis

With these issues in mind, the Court turns to Plaintiff's discovery requests and concludes

that an Order directing Defendants to respond to Plaintiff's requests for production is not warranted because: 1) Plaintiff has failed to demonstrate that the discovery he seeks could lead to the disclosure of additional evidence relevant to KAP's vocational necessity, or 2) Defendants have already produced responsive documents.

1. Request for Production 4 Does Not Seek Relevant Information

In request for production 4, Plaintiff seeks the following:

> Documents, including but not limited to, correspondence, contracts, agreements, and memorandum of understanding, between OOD and entities that operate [Comprehensive Transition and Postsecondary Programs] relating to their applications to provide VR services, and approval of and or denial of such applications or particular VR services.

(ECF No. 55–1, at PageID #919.)

Defendants generally objected on the basis that the request was overbroad, burdensome, vague, ambiguous, oppressive, not reasonably calculated to lead admissible evidence, cumulative, and duplicative. (ECF 55–4, at PageID # 969, 968.) Defendants further objected on the basis of relevance but answered that OOD does not "code" whether providers are Comprehensive Transition and Postsecondary Programs. (*Id*.) Defendants also agreed to supplement their response if Plaintiff narrowly tailored his request to identify the Comprehensive Transition and Postsecondary Programs for which he sought documents. (*Id*.)

After Plaintiff identified eight colleges in Ohio, Defendants supplemented their response:

> OOD offered to <u>consider</u> production of more specified documents. In consideration of the same, this appeal is about the KAP program at WKY. Furthermore, the [Comprehensive Transition and Postsecondary Programs] in Ohio are completely distinguishable because the Ohio programs are approved providers that went through the application process. There is no issue of fact that Ms. Elkins's own testimony confirmed that KAP is not a provider, has not applied to be a provider, and does not have a waiver—which is a prerequisite [*sic*]. Therefore, the documents requested about other programs that are providers are irrelevant and outside the scope of the appeal and the court's order. Again, the link to the publicly available providers section on OOD's website, which includes the blank sample provider

>acknowledgment form (Form 01),
>ips:https://OOD.Ohio.gov/wps/portal/gov/OOD/information-for-providers.

(ECF No. 52–2, at PageID # 881.)

Plaintiff's narrowed request 4 clearly seeks documents exchanged between OOD and other colleges that operate Comprehensive Transition and Postsecondary Programs. Plaintiff asserts that the Court should direct Defendants to respond to this request because "it is relevant to rebutting allegations by Defendants that they do not support programs." (ECF No. 55, at PageID # 898.) Plaintiff, however, fails to demonstrate how the requested discovery could lead to the discovery of additional evidence that could be admitted. Specifically, Plaintiff does not describe how such discovery could lead to the disclosure of information that could help the Court determine if the hearing officer erred when finding that KAP was not vocationally necessary because not all of KAP's services were vocationally necessary. Likewise, Plaintiff does not assert that the requested discovery could be used to prove that the hearing officer used the wrong standard when making his finding (*e.g.*, not all of KAP's services had to be vocationally necessary in order for the program to be vocationally necessary; KAP did not have to be vocationally necessary in order for it to be supported by OOD, etc.).

In short, the Court finds that Plaintiff has not demonstrated that documents between OOD and other colleges that operated Comprehensive Transition and Postsecondary Programs are relevant to this appeal involving the vocational necessity of KAP at WKU. Moreover, it appears that Defendants have not produced documents between OOD and any colleges (or other entities) about KAP's application to provide VR services because there are no such documents– KAP never sought to become a VR service provider. Accordingly, Plaintiff's request to compel further response to this request is **DENIED**.

### 2. Requests for Production 13, 15, and 16 Do Not Seek Relevant Information

In request for production 13, Plaintiff seeks:

> Documents related to oversight of OOD by [Rehabilitation Services Administration], including annual reviews, on-site monitoring, financial audits, and/or corrective action plans.

(ECF No. 55–1, at PageID # 922.) Request for production number 15 seeks:

> Reports submitted to and correspondence from the [Rehabilitation Services Administration] relating to OOD's compliance with federal laws, including but not limited to RSA-911quarterly reports.

(*Id*. at PageID # 923.) Request for production number 16 seeks:

> Correspondence between OOD and [Rehabilitation Services Administration] relating to: (a) the comprehensive assessment process; (b) Addendum services, including tutoring services and miscellaneous training (c) Informed choice; (d) Maintenance services; (e) Training services; (f) Transition services; (g) Pre-Employment Transition Services; (h) Physical and Mental Restoration Services; (i) Other goods and services; (j) Waivers, exceptions and/or variances to requirements of OOD rules, regulations, policies or procedures; and (k) the fee schedule.

(*Id*.)

Defendants generally objected on the basis that the requests were overbroad, burdensome, vague, ambiguous, oppressive, not reasonably calculated to lead admissible evidence, cumulative, and duplicative. (ECF No. 55–4, at PageID # 973, 974, 968.) Defendants also objected to request 15 and 16 on the basis of relevance, responded to all three requests that they would be willing to supplement their responses if Plaintiff narrowly tailored identified the documents he sought. (*Id*. at PageID # 974, 973.) Defendants also indicated that OOD submits an "ETA 9169 report to [Rehabilitation Services Administration]" and that this document was attached to its written responses. (*Id*.) Defendants further stated that OOD submits a quarterly 911 report to the Rehabilitation Services Administration— a 43,000 line excel spreadsheet, and that it would be produced if Plaintiff so desired. (*Id*.) Defendants also included in their written

responses a link to a website where other Rehabilitation Services Administration reports were publicly available. (*Id.*)

After the parties conferred, Defendants supplemented their responses to all three of these requests:

> Testimony about [Rehabilitation Services Administration] reporting is in reference to programs that are approved providers, which KAP is not. There is no issue of fact that Ms. Elkins's own testimony confirmed that KAP is not a provider, has not applied to be a provider, and does not have a waiver- which is a prerequite [*sic*]. Therefore, the general documents requested are completely irrelevant and outside the scope of the appeal and the court's order. Nonetheless, OOD has already provided you with the Quarterly report spread sheet, redacted for confidential and privileged information. There is not an RSA corrective action plan to relating to KAP because OOD properly denied payment.

(ECF No. 52–2, at PageID # 884.)

Plaintiff's requests 13,15, and 16 generally seek documents related to the Rehabilitation Services Administration's oversight of OOD. Plaintiff asserts that the Court should direct Defendants to respond to these requests because they are "relevant to rebutting allegations by Defendants that RSA 'approved' of its policies and practices in relation to this case." (ECF No. 55, at PageID # 901.) Plaintiff, however, once again fails to demonstrate how the requested discovery could lead to the discovery of additional evidence that could be admitted— i.e., evidence that would help the Court determine if the hearing officer erred when finding that OOD had proven that it was more likely than not that KAP was not vocationally necessary.

In any event, Defendants indicate that they have produced a link to publicly available Rehabilitation Services Administration reports as well as a copy of the quarterly 911 report to the Rehabilitation Services Administration. (ECF No. 56, at PageID # 983.) Plaintiff complains that the 911 report has been redacted and that he sought an explanation for the redactions. (ECF No. 55, at PageID # 900.) Defendants now state that personally identifiable information was

redacted from the 911 report. (ECF No. 56, at PageID #983.) The Court cannot conclude that such redactions are unnecessary or unjustified. Accordingly, Plaintiff's request to compel further response to these requests is **DENIED**.

> 3. Request for Production 14 Does Not Seek Relevant Information and Defendants Have Complied With Plaintiff's Request

In request for production 14, Plaintiff seeks the following:

> Documents relating to OOD policies, procedures, guidance, and or training to staff regarding addendum services, tutoring services and miscellaneous training services, including correspondence from Jim Gears, such as that testified to by Mr. Burns in his deposition.

(ECF No. 55–1, at PageID # 923.)

Defendants generally objected on the basis that the request was overbroad, burdensome, vague, ambiguous, oppressive, not reasonably calculated to lead admissible evidence, cumulative, and duplicative. (ECF No. 55–4, at PageID # 973, 968.) Defendants further objected on the basis of relevance but answered by referencing "document labeled VR Providers – Addendum and Training Update, Miscellaneous Training Options, and VR Provider Manual." (ECF No. 55–4, at PageID # 973.)

After meeting and conferring, Defendants supplemented their answer:

> There is no issue of fact that Ms. Elkins's own testimony confirmed that KAP is not a provider, has not applied to be a provider, and does not have a waiver – which is a prerequisite [sic]. Therefore, the documents requested are irrelevant and outside the scope of the appeal and the court's order. Again, the link to the publicly available provider's section on OOD's website is
> http://ood.ohio.gov/wps/portal/gov/ood/about-us/communications/literature.

(ECF No. 52–2, at PageID # 880.)

Plaintiff's request seeks documents related to addendum, tutoring, and training services, including a yearly email from Jim Gears that addressed these issues. Plaintiff asserts that the Court should direct Defendants to respond to this request because it is "relevant to developing

11

factual evidence regarding Plaintiff's claims and rebutting 'defenses' made by Defendants such as that [KAP] 'is not a vocational rehabilitation service.'" (ECF No. 55, at PageID # 903.) Plaintiff has failed, however, to demonstrate how the requested discovery could lead to the disclosure of evidence that would help the Court determine if the hearing officer erred when finding that OOD had proven that it was more likely than not that KAP was not vocationally necessary. Moreover, the Court does not see how it could lead to evidence that might undermine Defendants' statement that KAP is not a vocational rehabilitation service. KAP is not a rehabilitation service. Indeed, it appears to be an organization that provides services— some of which, the hearing officer found, were not vocationally necessary.

In any event, Plaintiff indicates that Defendant has produced eight documents that reference addendum, tutoring, and training services. (ECF No. 55, at Page ID # 903.) Defendants indicate that they have complied with Plaintiff's request and note that they produced a link to the VR Providers Manual and the November 26, 2018, email from Jim Gears, even though that email does not contain Mr. Gears' signature block. (ECF No. 56, at PageID # 983–84; ECF No. 56–2, at PageID #1072.) Accordingly, Plaintiff's request to compel further response to this request is **DENIED**.

    4.    Request for Production 17 Does Not Seek Relevant Information

In request for production 17, Plaintiff requests:

> OOD's case management contract agreements, including those as testified to by Japiya (Jay) Burns in his deposition.

(ECF No. 55–1, at PageID # 924.)

Defendants generally objected on the basis that the request was overbroad, burdensome, vague, ambiguous, oppressive, not reasonably calculated to lead admissible evidence, cumulative, and duplicative. (ECF No. 55–4, at PageID # 974, 968.) Defendants further

objected on the basis of relevance but answered that it would consider supplementing if Plaintiff narrowly tailored identification of the case management contract agreement that he sought. (*Id*.)

After conferring, Defendants supplemented their response:

> This appeal is about the KAP program at WKU, which is not a Developmental Disability (DD) board, mental health agency, or otherwise partner entity – nor had KAP applied or is eligible to be the same. Therefore, the documents requested for case management contracts with wholly distinguishable entities are completely irrelevant and outside the scope of the appeal and the court's order.

(ECF No. 55–2, at PageID # 884.)

Plaintiff's request seeks case management contracts. Plaintiff asserts that the Court should direct Defendants to respond to this request because it is "relevant to . . . defenses raised in this case." (ECF No. 55, at PageID # 905.) Specifically, Plaintiff claims that it is relevant to Defendants' claim that ODD does not support "such programs" as KAP because KAP is a disability-specific (autism) program. (*Id*.) He claims that OOD's case management contracts with other entities, such a Developmental Disability board or a mental health agency, would show that OOD indeed supports entities that provide disability specific services such as developmental disabilities or mental health diagnoses. (*Id*.)

Plaintiff has failed, however, to demonstrate how the requested discovery could lead to the disclosure of evidence that would help the Court determine if the hearing officer erred when finding that OOD had proven that it was more likely than not that KAP was not vocationally necessary. Although Plaintiff alleges that he was told that KAP could not be supported because programming for specialized disability populations could not be funded without supervisor approval (ECF No. 1, at ¶ 76), the hearing officer did not conclude that Plaintiff's KAP support request was denied because KAP was an autism-specific program. Instead, the hearing officer

13

found that not all of KAP's services were vocationally required. Accordingly, Plaintiff's request to compel further response to this request is **DENIED**.

5. Request for Production 18 Does Not Seek Relevant Information

At deposition, Jayipa Burns testified that his job duties included using a technical assistance mailbox to communicate with persons or parties interested in becoming a provider and answering questions about billing and use of report templates. (ECF No. 55–3, at PageID # 946, 950–51.) In request for production 19, Plaintiff seeks emails sent and received from that technical assistance mailbox. It specifically seeks:

> Documents sent and received by OOD using the email address crpvendor@ood.ohio.gov and PCMU @ood.ohio.gov relating to (a) The comprehensive assessment process; (b) Addendum services, including tutoring services and miscellaneous training; (c) Informed choice; (d) Maintenance services; (e) Training Services; (f) Transition services; (g) Pre-Employment Transition Services; (h) Physical and Mental Restoration Services; (i) Other goods and services; (j) Waivers, exceptions and/or variances to requirements of OOD rules, regulations, policies or procedures; and (k) The fee schedule.

(ECF No. 55–1, at PageID # 924.)

Defendants generally objected to this request on the basis that it was overbroad, burdensome, vague, ambiguous, oppressive, not reasonably calculated to lead admissible evidence, cumulative, and duplicative. (ECF No. 55–4, at PageID # 975, 968.) Defendants further objected on the basis of relevance but answered that they could search for emails and would consider supplementing if Plaintiff narrowly tailored identification of proposed search terms. (*Id.*)

After the parties conferred, Plaintiff provided search terms and Defendants supplement their response. (ECF No. 55, at PageID # 907.)

> OOD offered to <u>consider</u> production of more specified documents upon identification of search terms. In consideration of the same, the result is voluminous and results in an overly broad request. Since Defendants do not have

14

an obligation to provide Plaintiff's counsel with a list of how many hits these search terms produce, no further information is forthcoming at this time. However, should you choose to narrowly tailor your search to relevant terms, then OOD may <u>reconsider</u> with the same reservations and objections.

(ECF No. 52–2, at PageID # 885.) Defendants have also filed an affidavit from an OOD employee averring that searches of the technical assistance mailboxes resulted in 7,017 emails. (ECF No. 54, at ¶¶ 3, 4.)

Plaintiff asserts that the emails requested are relevant to this appeal because Defendants have "repeatedly asserted" that they believe that KAP's provider application status is an issue in this case. (ECF No. 55, at PageID # 907.) Plaintiff has failed, however, to demonstrate how the requested discovery could lead to the disclosure of evidence that would help the Court determine if the hearing officer erred when finding that OOD had proven that it was more likely than not that KAP was not vocationally necessary. KAP never applied to become a provider. Indeed, that does not seem to an issue that is disputed. But even if it had applied, KAP's application status did not impact the hearing officer's vocational necessity analysis. Accordingly, Plaintiff's request to compel further response to this request is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Elizabeth A. Preston Deavers*
DATED: May 27, 2021     **ELIZABETH A. PRESTON DEAVERS**
    **UNITED STATES MAGISTRATE JUDGE**